Our fifth and final argument today is case number 109321, Donald B. Cookson v. Todd Price et al. Appellants. Agenda number 10. Mr. Unrath. Thank you, Your Honor, Counsel. Just a few weeks after this Court granted our petition for leave to appeal, the law changed. The LeBron decision was handed down, which voided the statute that formed the entire basis of our case. And I am in the uncomfortable situation Mr. Unrath, I know I called your name, but for the record, would you please state your name? Yes, my name is Craig Unrath, and I represent the defendant appellant. We're here to discuss a statute that the trial court and appellate court have never seen. As a matter of fact, no one's seen it. It's never been printed anywhere. We had to assemble this all on our own. And I'm a little bit uncomfortable with that. I'm also uncomfortable with the notion that the reasons that this Court relied upon in granting our petition, for all we know, may no longer exist. Now the appellate court's second district just recently, just a few weeks ago, addressed a similar case, somewhat similar. Under Section 2-622, the trial court dismissed the case because the plaintiff had violated the 90-day deadline. It went up on appeal. The appellate court said, well, the bench came down. The law has changed. We declined to address the merits. We're going to remand this to the circuit court to find out if there was just reason for the delay in filing the Health Professionals Report. Now, that would be one possible solution in this case right here. I submit, however, that, well, we've come a long way. We've expended a considerable amount of thought and resources. And I would hate to see an opportunity pass for coming up with something, to either enunciate or reaffirm certain fundamental principles that will apply not only to the current 1989 version of 2-622, but would potentially assist courts and litigants in the future. So are you suggesting that we're in danger of issuing an advisory opinion? For all I know, Your Honor, the You'd like us to, but you think it might be. I think there's that possibility. No, no. As a matter of fact, I would not say that. It would be advisory if there was no statute in effect right now. But right now, you are And for all we know, the statute may never be amended again. So it's hypothetical. Yeah, very hypothetical, Your Honor. Particularly since in LeBron, this court welcomed the legislature, encouraged them to reenact statutes that had been voided by that decision. Nevertheless, I think that there are certain fundamental principles that apply to all versions of 2-622. Now, before we even get there, though, we have to determine whether or not our case is moot. The 2005 version, the entire basis of our suit here, relies on a provision in 2-622 that required the plaintiff to file a report of a health professional licensed in the same profession as the defendant. In this case, the defendant is a physical rehabilitationist. Now, we're under the 1989 version, modified. Under the 1989 version, you are only required to file that specific type of health professional's report where the defendant is a physician licensed to treat human ailments without the use of drugs or medicines and without operative surgery, a dentist, a podiatrist, a psychologist, or a napropath. Now, plaintiff's counsel pointed out accurately that the Medical Practice Act defines those 18 words as meaning one thing. It means chiropractor, and that's it. And if we view this statute extremely narrowly, well, it applies to chiropractors, dentists, podiatrists, psychologists, and napropaths, and that's it. And if that is true, then this court could issue possibly the most extensive petition the Supreme Court has ever written, because our entire case is out the door. We confess that. What we do not confess is that the statute should be read so narrowly. You look at code words. Code words are supposed to give you a way of describing something lengthy in a very short way. Here we have the opposite situation. Chiropractor is being described in 18 words. And the question is, why would anyone do that? What possible purpose could that serve? Now, it's been done in the Medical Practice Act. Is there anything, anything out there that suggests that the legislature intended that to apply to Section 2-622? And I would submit that there's not. I think that if the legislature intended to say chiropractor, they would have said chiropractor. They would have said the statute is already as long as my arm. Why would they need to add further verbiage? Now, in our reply brief, we cited the, oh, I hope my Latin is up to speed, the principle of adjustum generis, which basically says that it's a rule of statutory construction stating that the particular words indicate the class, the general words extend the statute to anything within that class. And we think that this is a reasonable interpretation of 2-622. That makes sense. And if this Court adopts that interpretation, well, then physical therapists are certainly included within this class. Physical therapists treat human ailments without operative surgery or medicines. Now, finally, we have one last argument, which is, is there any substantive difference between a napperpath and a physical therapist? I've been to a napperpath. I don't know if any of you have. Anyone who has been to a napperpath, I will submit that they, I defy them to come up with any substantive difference between a physical therapist and a napperpath. I think that to find this case moot on these grounds does us all a disservice, only because it just simply doesn't make sense. There's nothing in the record about that at the trial court level. Isn't that correct? That's correct, Your Honor. As a matter of fact, at the trial court level, it was any time you make a claim against an individual, you need to file a report by someone with the same class of license. So, yeah, napperpath, dentist, I just don't see any other reasonable way of viewing the statute. And I think that we do a disservice by if we go ahead and do this, are we doing this before there's any opportunity for you or the plaintiff to argue that to the trial court? Yes. Yes, Your Honor. And should we be doing it? Is that, is that an advisory? Is this, this is not really an issue before us. The issue before us is Section 6-222 prior to LeBron. Yes, Your Honor. And I think that you can take the facts and circumstances of this case and apply them to the pre-LeBron version. I think that this court is capable of doing that. The trial court has made its ruling. As I pointed out, it's certainly possible for this court to remand, to have the court review this in the first instance under the new statute, the new, quote, old statute. But it's certainly within this court's power to rule in the first instance. And I believe that it can do so and should do so. Now, the determination as to whether or not this case is moot is an issue of statutory interpretation. It's reviewed under the standard of de novo review. The determination as to whether the trial court erred in dismissing a complaint for failure to comply with Section 2-622, that is an entirely different standard. That is abuse of discretion. And this court in the, I believe it's the McCassell decision, yes, McCassell v. Sheinkopf stated that it will only be overturned if there's been a manifest abuse of the trial court's discretion. Now, when talking about abuse of discretion, I always refer to, it's my favorite quote, comes from Judge Easterbrook on the Seventh Circuit. He was characterizing the ruling in the lower court. And he said, that was a reasoned and reasonable decision, and therefore we will not disturb it. Had the judge ruled the other way, we wouldn't have disturbed that either. That is what it means to have discretion. And I believe that when you look at this case, the trial court exercised his discretion. He made a reasoned and reasonable determination. Had Judge Corey ruled the opposite way, denied our motion to dismiss, found, looked at it and said, I see no sign of bad faith, I see that we have potentially a meritorious claim, I'm going to allow this party to substitute an entirely new health professional's report, to me that's an exercise of discretion. That should be, this court owes its deference to. I believe that the same principle applies to the decision that he did make. He looked at a situation where he said, this health professional's report cannot be cured by amendment. It can only be cured by substitution. An entirely new report, and we're way past the deadline on this. Deadline expired some six months earlier. That was a reasoned and reasonable determination entitled to deference. If reasonable persons can differ as to the propriety of a trial court's action, the rule is that the reviewing court, that that court has not committed an abuse of Now, there's one other key difference between the statute currently in effect and the statute that we addressed in the lower courts, and that's the phrase, no further extensions will be allowed. Now, that language is gone now. We have a 90-day deadline. The question is this, does it matter that the phrase, no additional 90-day extensions will be allowed? Now that that's gone, does that change anything? I submit that it does not. And for this reason, Plaintiff's counsel never asked for an extension of time. It never even came into play. What the plaintiff's counsel asked for was to amend his report, basically amending his complaint. And that is within the trial court's discretion to grant or deny. Now, the court looked at this and said if you were just curing defects in the complaint, we'd have a different story. But as it is, he said this can only be cured by a wholesale substitution. And in his discretion, he denied it. My main argument here is actually not against plaintiff's counsel. My argument is with the if you have a potentially meritorious claim and no indication of bad faith, a trial court abuses its discretion in refusing to allow an amendment to the Health Professionals Report. Even if that's a wholesale substitution, even if it's beyond the 90-day deadline, it could be a year past the deadline, two years, makes no difference. A trial court abuses its discretion. And I believe that the trial court or the appellate court painted this with too broad a brush. There has to be some limit here. The legislature set a 90-day limit. It has to have some meaning. Now, I'd like to John, I'm a tad confused, but could you just help me? Maybe you've touched on this, but could you help me one more time? We have a concurrence, of course, in the opinion that said that the affidavit complied, that there was no need for an additional affidavit, correct? Is that what I believe? So the argument here is that the statute required, whatever form it's going to take, a report from a health care professional licensed in the same profession. And that's our problem, right? Now, in your opening brief, you suggest that Price was sued in his capacity as a physical therapist, a professional, profession, excuse me, that easily satisfies the statutory requirement of a physician licensed to treat human ailments. And then in your reply brief, you make the argument that, in fact, the relationship here is between a nephropath and a physical therapist. So which is it? Is it the physical, is he, is your argument that this statute is triggered because he's the same thing as a nephropath? Or is it because he is a physician licensed to treat human ailments without the use of drugs or medicines and without operative surgery? Which is it? Both. God, no wonder I'm confused. The, and perhaps I've confused you even more. The, I submit that the, under the doctrine or principle of statutory construction of ad justem generis, that the of individuals, not just dentists, not just nephropaths. It's anything similar to that. And I believe that a physical therapist easily fits that. Do we need some kind of fact determination, then, to figure that out? How do we, how does a court sit here and determine whether this physical therapist falls into one of these kinds of categories the way you've defined them? I think that the statute speaks for itself. I think that it's laying out general terms. Any physician, any health professional who, and I'm sorry, but I don't have it memorized, who treats human ailments without the use of drugs, medicines, or without operative surgery. That is a broad class of individuals. A physician licensed to treat human ailments. Right. Right? Right. You're saying that that can be read to mean a physical therapist. Yes, I do. And I do not believe physicians should be read to say someone with a medical degree only because within the class are also included psychologists and nephropaths, neither one of whom have a medical degree. I believe that this denotes a large class of which a physical therapist falls within. And it is also, and in further support of that, I find no significant difference between a nephropath and a physical therapist. I think that that's further support for my assertion there. But that's so subjective, isn't it, counsel? I mean, for everyone whose affidavit is more similar to the next, say for instance, plaintiff says that physical therapists are more similar to nurses than chiropractors, without much support for that conclusion. So I mean, then it's left up to whoever signs the affidavit to argue that we're more like somebody else to fall within the ambit of the statute. I look at it as an issue of law, not fact. I think that every court will be called upon to interpret as circumstances arise. A massage therapist might also fall within this class. There are many different types of individuals that can fall within this class, and it will be up to the individual courts to rule on that. I don't think that it's possible to delineate a specific list. I think that would be a mistake. I think that this denotes a large class of individuals who are not physicians, basically, is what I'm getting at there. You indicated something, I think, at the beginning of your argument, Mr. Unrath, namely that this may not even be here anymore in the posture of why we took the case. And certainly, since the LeBron decision, it's interesting, the LeBron decision came out after the appellate court decision prior to briefing, right? You mentioned LeBron in your appellate brief. Yeah, yes. And certainly, I think the plaintiff's going to get up here and talk about being moot, but I agree with you that, at least in the context of the briefs, the issue has been raised before this court with respect to the 1989 version, right? I mean, that's your position. Yes. The issue, at least, is in front of us in that context, that we have briefs where you did brief the issue, right? Yes, absolutely, Your Honor. I think that I see no problem with this court addressing it. Here's the problem that I need to address. What do we do with an appellate court decision and a trial court decision that really didn't have it in front of them? I'm thinking about, if we agree with you, do we reverse the appellate court when their decision may have been sound under the 2005 statute? Do we vacate that decision if we agree with you and say, well, we can't even affirm on a different basis because they didn't even have that basis before? It is a very strange posture that is before us. I mean, isn't that true? It's very strange, Your Honor. It boggles my mind. I don't see how you can vacate the appellate court's decision. I don't see how it can even be overturned. It applies to a completely different statute. What I do believe, though, is that the court can look at the current statute, in effect, right now, compared to the facts of this case, and recognize that Judge Corey made a reasoned and reasonable decision that was not an abuse of discretion, even under the statute as it is today. When your PLA was filed, it was based on the pre-Lebron statute. Yes, it was, Your Honor. If there are no further questions, thank you. Mr. O'Shaughnessy. Good morning. May it please the court. Mr. Unrath. My name is Patrick O'Shaughnessy. I'm from the Janssen Law Center in Peoria, and I represent Don Cookson in this matter. This case is here because of my mistake back at the trial court level at the very beginning. Under the statute at the time, which had been in effect for cases that accrued within 60 days of that time period, I filed the wrong one. I used the wrong author of the report, and the attempts to correct it were denied, and that's how we worked our way here. Now, as we are here, I completely agree with this concept being mind-boggling, because I have pages of my notes ready to argue, and I didn't even know where this argument was going to go today. So the only thing I want to specifically address is looking at this 1989 statute, the one that lists five categories. The statute's very clear. It has, you fit into one of two things. Either you're one of the five categories of which the author has to be the same, or you're all others, because it says, as to all other defendants. So those five categories, one is the lengthy one, a physician licensed to treat human ailments without the use of drugs or medicine, and without operative surgery. Then you have dentist, podiatrist, psychologist, and nephropath. The legislature has denoted a specific list here, and it consists of only five professionals. This first one, as I've pointed out in the briefs, is the definition of a chiropractor found elsewhere in the statutes, and there doesn't seem to be a disagreement on it. What I disagree on with my opponent today is that you can use these to create broader categories of people that are not listed here, because there is that other category, as to all other defendants who are not one of these five. Now the only argument the defendants or the appellants have today is that you have to place a physical therapist assistant either into number one, the chiropractor definition, or number five, the nephropath definition. And this is something that just cannot be done. If you just look at the definition itself, you're going to have to say two things. You're going to have to call a physical therapist assistant a physician to do that. A physician. The definition also says this is a physician licensed to use, to treat human ailments without the use of drugs or medicines. And as I also cited in my brief, a physical therapist assistant can use drugs and medicines, topical ones, but they can use them. They're licensed to when directed to do so. So there's two parts of that definition that a physical therapist assistant clearly doesn't fit, even if you ignore the fact that they're talking about a chiropractor in the first place. Now as for a nephropath, that to me is the same thing. This is also a licensed profession in the state of Illinois. There is a physical therapy act which defines these therapists. Nephropaths are defined elsewhere. They have separate licenses. So you can't say that they are part of the same thing or simply call the assistant a nephropath just like you can't call them a chiropractor. So although you say it's moot, you're okay with us deciding this on the 1989 stage? Yes. Absolutely. And here's why. That's the statute I was trying to comply with when I filed this in the first place. And I've reconstructed this 100 times in my mind. Why didn't I see that? Why didn't I know that we're 60 days past the date on this accrual that is the new statute? I don't know. I don't know why. But what I did with Dr. Kornreich's report was I was filing the physician's report like you always had to file for someone that isn't one of those five categories. I consciously went beyond trying to find a physical therapist assistant because in my mind the rule is always the same. You've got to have a doctor. So that's why it happened. But it was the wrong statute I was applying. Well, the appellate court didn't think you screwed up. They think that I moved appropriately after the mistake to correct it. Yeah, exactly. But now we're here saying, okay, I messed up in the trial court. I begged for mercy in the appellate court. And now, well, I guess. You're getting good at it, so you're begging for mercy here as well. I don't know which way to beg for it, though. Because now I'm having to say that I didn't mess up in the first place. I clearly did. But now, you know, through this, the way it's all worked out, it wasn't a mistake because of the LeBron decision. The only thing I'd point out on this is this has been approached through cases before. And I cited a few of them. No one has ever interpreted this delineation of five professionals as putting a physical therapist in that category. And the one case, I think it was the Shanks case, specifically addressed that, saying, yeah, this doesn't make sense. Because then physical therapists, you would need a doctor as well. It was actually pointed out as one category of person that you wouldn't use another physical therapist to sign over on. With regard to the big picture here, I do believe this is a moot point. In the event that the abuse of discretion issue is something to be considered, I believe I've briefed that. And I don't feel the need to emphasize any points of that. It's all written down. Is it your position, Mr. O'Shaughnessy, that the amended affidavit complies with both the pre- and the post-LeBron decision? The 1989 and the 2005 or no? It can't. Because the amended affidavit is from a physical therapist assistant. So that would run afoul of the 1989 version of the statute. Right. So from your position, we're back to the first affidavit. Right. If we're going to look at the 1989, look at it from the prospect of what you filed initially. Right. Exactly. Any other questions? Thank you. Just briefly, Your Honors. One point that I agree with in my opponent's brief, I didn't realize that at the time I was writing my initial brief. But he set out a list of bullet points near the end of his brief, suggesting that I'd really gone a little bit too harshly on him. And I agree. I think that when you write a brief, you are trying to zealously represent your client. You're trying to build up steam, trying to make your point as forcefully as you can. And these comments, which were interspersed fairly far apart in the brief, when put together in a single paragraph, really, I thought were a bit unseemly. I just want to assure the Court that I see absolutely no sign of bad faith on the part of Mr. O'Shaughnessy. I believe that the appellate court's opinion is painted with much too broad a brush. I think that it invites abuse. But in this case, on the point of bad faith, I have no argument on that or no complaint against opposing counsel whatsoever. If there are no further questions from the Court, thank you very much. We ask that you uphold the trial court's dismissal of this case. Thank you very much. Thank you for your arguments. Case number 109321, Donald B. Cookson, I believe, versus Todd Price et al. Appellants, agenda number 16, as taken under advisement.